Filed 9/3/24  P. v. Scott CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B329373 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. BA448436 |
| MARQUS SCOTT, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Lisa B. Lench, Judge.  Affirmed.

William L. Heyman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Michael C. Keller, Deputy Attorneys General, for Plaintiff and Respondent.

_____

At a resentencing hearing, Marqus Scott requested the court conduct a hearing pursuant to *People v. Franklin* (2016) 63 Cal.4th 261 (*Franklin*) to preserve evidence for his future youth offender parole hearing. The court denied the request on the ground that Scott was statutorily ineligible for youth offender parole, and Scott appeals. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Scott was born in September 1996. At age 17, Scott committed second degree robbery (Pen. Code,[1] §211); the juvenile court later declared Scott a ward of the court pursuant to Welfare and Institutions Code section 602.

As described in the opinion in Scott's prior appeal,[2] on March 14, 2016, Scott, age 19, participated in a drive-by shooting that killed Bradford Smith. (*People v. Scott* (Mar. 2, 2022, B301478) [nonpub. opn.]) In February 2016 and July 2016 police discovered Scott was in possession of a firearm. (*Ibid.*) Scott was convicted of special circumstances murder (§§ 187, subd. (a); 190.2, subd. (a)(21), (22)) and two counts of unlawful firearm activity (§ 29820, subd. (b)). (*Scott, supra*, B301478.) The trial court found Scott was subject to the enhanced sentencing provisions of the "Three Strikes" law (§§ 667, subds. (b)–(j), 1170.12, subds. (a)–(d)) because his juvenile adjudication

---

[1]   Further statutory references are to the Penal Code unless otherwise indicated.

[2]   Scott requested we take judicial notice of certain pages of our March 2, 2022 opinion from Scott's earlier appeal, case No. B301478. We take judicial notice of the entire opinion. (Evid. Code, §§ 452, 459, subd. (a).)

constituted a prior serious or violent felony conviction for purposes of sentence enhancement.

In Scott's first appeal, we vacated the gang-related special circumstance and enhancement findings due to changes in the applicable law, and we remanded the matter to permit the People to elect whether to retry the vacated allegations. (*People v. Scott*, *supra*, B301478.) On remand, the People elected not to retry those allegations.

At resentencing, the court sentenced Scott to life in prison without the possibility of parole (LWOP) for Smith's murder, plus a consecutive determinate sentence of five years four months for the two counts of unlawful firearm activity. Scott asked the court to set a *Franklin* hearing to preserve evidence pertinent to a future youth offender parole hearing. The trial court refused on the ground that because Scott had been sentenced to LWOP, he was statutorily ineligible for a youth offender parole hearing. Scott appeals.

### DISCUSSION

Section 3051 requires the Board of Parole Hearings (Board) to conduct a youth[3] offender parole hearing during the 15th, 20th, or 25th year of a defendant's incarceration if the defendant was 25 years or younger at the time of the "controlling offense," that is, "the offense or enhancement for which any sentencing court imposed the longest term of imprisonment." (§ 3051, subds. (a)(2)(B), (b)(1)–(3).) "A person who was convicted of a controlling offense that was committed when the person was

---

[3] We refer to those over 18 years of age but younger than 26 years at the time of their offense as youth offenders, and to those under 18 years of age at the time of their offense as juveniles.

25 years of age or younger and for which the sentence is a life term of 25 years to life shall be eligible for release on parole at a youth offender parole hearing during the person's 25th year of incarceration." (*Id.*, subd. (b)(3).) Several categories of offenders, however, are excluded from eligibility pursuant to section 3051, subdivision (h), including offenders such as Scott who were "sentenced to [LWOP] for a controlling offense that was committed after the person had attained 18 years of age."

Offenders who are eligible for youth offender parole hearings are entitled to what is termed a "*Franklin* hearing" "to provide an opportunity for the parties to make an accurate record of the juvenile [or youth] offender's characteristics and circumstances at the time of the offense so that the Board, years later, may properly discharge its obligation to 'give great weight to' youth-related factors" at the eventual hearing. (*Franklin, supra,* 63 Cal.4th at p. 284.)

On appeal, Scott argues the trial court erroneously denied his *Franklin* hearing request because section 3051 violates the constitutional guarantee of equal protection and prohibition against cruel or unusual punishment.

I.     Equal Protection

Scott's first equal protection argument is that section 3051 denies him equal protection of the laws under the Fourteenth Amendment because there is no rational basis to deny a youth offender with an LWOP sentence a parole hearing when youth offenders not sentenced to LWOP receive one. As Scott acknowledges in his reply brief, the California Supreme Court's recent decision in *People v. Hardin* (2024) 15 Cal.5th 834 (*Hardin*) forecloses this contention. In *Hardin*, the Supreme Court held that "section 3051's exclusion of young adult offenders

4

sentenced to [LWOP] is [not] constitutionally invalid under a rational basis standard, either on its face or as applied to . . . individuals who are serving [LWOP] sentences for special circumstance murder." (*Id.* at p. 839.)

Scott's second equal protection argument is that there is no rational basis for distinguishing between juveniles sentenced to LWOP, who are eligible for a parole hearing (§ 3051, subd. (b)(4)), and youth offenders sentenced to LWOP, who are not eligible for such a hearing (*id.*, subd. (h)). The courts that have considered this argument have rejected it, and we agree with their analysis. (E.g., *People v. Sands* (2021) 70 Cal.App.5th 193, 202–205 [Legislature may rationally extend the possibility of parole to those whose crimes are less grave than special circumstance murder, a crime it " 'deems so morally depraved and so injurious as to warrant a sentence that carries no hope of release for the criminal and no threat of recidivism for society' "]; *In re Murray* (2021) 68 Cal.App.5th 456, 463–465 ["dr[awing] the line at adulthood" has a rational basis] (*Murray*); *People v. Morales* (2021) 67 Cal.App.5th 326, 345–349 (*Morales*) ["for purposes of LWOP offenders, the line drawn at 18 is a rational one"]; cf. *In re Jones* (2019) 42 Cal.App.5th 477, 482 (*Jones*) ["By drawing the line at a defendant's 18th birthday, the Legislature has chosen to target the youngest, and presumably most deserving, of the group of youthful offenders whose brains were still developing and whose judgment had not yet matured. While young adults share many of the attributes of youth, they are by definition further along in the process of maturation, and the law need not be blind to the difference"].) Additionally, although it was not considering the same exclusion from parole eligibility under section 3051, subdivision (h), the California Supreme Court has recently stated

5

that young adults and juveniles are "constitutionally different" for purposes of sentencing, and it rejected the argument that the Legislature, having extended parole eligibility from juveniles to youth offenders, must "treat young adults the same as it treats juveniles" in the section 3051 context. (*People v. Williams* (Aug. 29, 2024, S262229) __Cal.5th __ [applying *Hardin* and finding a rational basis for section 3051, subdivision (h)'s exclusion of defendants sentenced under the One Strike Law (§ 667.61) from parole eligibility].)

We follow the *Hardin* Court and many others in finding no equal protection violation in this context but highlighting the need for additional legislative attention to this issue. (*Hardin*, *supra*, 15 Cal.5th at p. 864; see, e.g., *Murray*, *supra*, 68 Cal.App.5th at p. 464; *Morales*, *supra*, 67 Cal.App.5th at p. 349; *People v. Jackson* (2021) 61 Cal.App.5th 189, 201–202 (conc. opn. of Dato, J.); *People v. Acosta* (2021) 60 Cal.App.5th 769, 781 (*Acosta*); *People v. Montelongo* (2020) 55 Cal.App.5th 1016, 1035–1036 (conc. opn. of Segal, J.) (*Montelongo*); *Jones*, *supra*, 42 Cal.App.5th at pp. 486–487 (conc. opn. of Pollak, J.).) As the *Hardin* Court explained, "Special circumstance murder is an unquestionably grave offense, one that exacts an unimaginable toll on the lives of victims and those the victims leave behind. But we also know that young people—even young people who have committed grave offenses—are capable of significant, sometimes transformative, change over the course of their lifetimes. To extinguish any hope of release, particularly for an individual just past the cusp of adulthood, is a form of retribution that exacts its own price—one borne not just by the individuals involved, but by their families, by their communities, and by society as a whole." (*Hardin*, at pp. 864–865.)

6

II.    Cruel or Unusual Punishment

In an argument essentially reframing his first equal protection claim, Scott contends section 3051's extension of youth offender parole hearings to most but not all youth offenders causes LWOP sentences for youth offenders to be grossly disproportionate to the offenses for which they were imposed, rendering them cruel or unusual under the California Constitution.  (Cal. Const., art. I, § 17.)  Scott concedes his LWOP sentence "may not meet the three-part test set forth in *In re Lynch*" (1972) 8 Cal.3d 410, 424–427 for determining whether a punishment is cruel or unusual pursuant to the California Constitution, but maintains it is nonetheless grossly disproportionate because it fails to take into account the reduced culpability of youth offenders.

In *Hardin*, the California Supreme Court held the Legislature had a rational basis for excluding youth offenders serving LWOP sentences from the extension of youth offender parole hearings.  "[T]he Legislature consciously drew lines that altered the parole component of offenders' sentences based not only on the age of the offender (and thus the offender's amenability to rehabilitation) but also on the offense and sentence imposed.  The lines the Legislature drew necessarily reflect a set of legislative judgments about the nature of punishment that is appropriate for the crime."  (*Hardin, supra,* 15 Cal.5th at p. 855.)

The California Supreme Court explained, "Life without parole is the most severe sentence of imprisonment in California law, applicable only in cases of special circumstance murder and a small number of other offenses the law regards as particularly serious.  By excluding persons sentenced to life without parole

7

from youth offender parole proceedings, the Legislature exercised its prerogative to define degrees of culpability and punishment by leaving in place longstanding judgments about the seriousness of these crimes and, relatedly, the punishment for them." (*Hardin, supra*, 15 Cal.5th at p. 853, fn. omitted.) The court stated, "The statutory framework indicates that the Legislature aimed to increase opportunities for meaningful release for young adult offenders, while taking into account the appropriate punishment for the underlying crimes, depending on their severity. These are essentially the same considerations involved whenever the Legislature exercises its responsibility 'for determining which class of crimes deserves certain punishments and which crimes should be distinguished from others.' [Citation.] They are also not dissimilar from the considerations that prompted the high court to distinguish, for Eighth Amendment purposes, between sentencing juveniles for homicide offenses and sentencing juveniles for nonhomicide offenses. (*Miller* [*v. Alabama* (2012) 567 U.S. 460, 473 (*Miller*)] [based on considerations of 'both moral culpability and consequential harm,' juvenile homicide offenders, unlike juvenile nonhomicide offenders, may be sentenced to life without possibility of parole, but only after individualized sentencing that gives appropriate consideration to the mitigating attributes of youth].) Much as the high court invoked culpability-related concerns to distinguish among crimes in that context, it is reasonable to infer that the Legislature considered such concerns in this one." (*Hardin*, at pp. 855–856.)

Given that the *Hardin* Court found a rational basis for section 3051's distinction between youth offenders sentenced to LWOP and youth offenders not sentenced to LWOP, it is difficult to envision how the same distinction could render an LWOP

sentence "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends fundamental notions of human dignity." (*In re Lynch*, *supra*, 8 Cal.3d at p. 424.) Scott does not address this tension in his reply brief, filed after *Hardin* was decided; he simply asserts that because there was no cruel or unusual punishment claim in *Hardin*, that decision does not affect the analysis here.

California courts have uniformly rejected the argument that LWOP sentences imposed on young adults between the ages of 18 and 25 constitute cruel and unusual punishment. (E.g., *Acosta*, *supra*, 60 Cal.App.5th at pp. 781–782 [LWOP for a 21-year-old offender on autism spectrum did not violate Eighth Amendment]; *People v. Windfield* (2021) 59 Cal.App.5th 496, 525–526 [despite scientific literature showing the features of juveniles extend to 18 year olds, "we are bound by precedent and there is no precedent for us to declare that *Miller* applies to 18 year old[]s"]; *Montelongo*, *supra*, 55 Cal.App.5th at pp. 1030–1032 [LWOP for an 18-year-old offender did not violate the Eighth Amendment]; *People v. Abundio* (2013) 221 Cal.App.4th 1211, 1220–1221 [LWOP for an 18-year-old defendant was "not cruel and/or unusual"].)

Although Scott points out that *Acosta*, *Windfield*, and *Montelongo* concern cruel and unusual punishment claims under the Eighth Amendment rather than claims under the California Constitution, he does not provide any cogent argument why this distinction makes a difference here. (See *People v. Baker* (2018) 20 Cal.App.5th 711, 733 [noting the "considerable overlap in the state and federal approaches" to cruel and/or unusual punishment, both of which prohibit grossly disproportionate punishment].) As the California Supreme Court has held that it

9

does not violate either federal or state constitutional prohibitions on cruel and/or unusual punishment to sentence youth offenders who commit special circumstance murder to the death penalty (*People v. Tran* (2022) 13 Cal.5th 1169, 1234–1235), the lesser sentence of LWOP for special circumstances murder is necessarily constitutional.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

STRATTON, P. J.

We concur:

GRIMES, J.

VIRAMONTES, J

10